*In re* MARRIAGE OF EVA VENDREDI, Petitioner-Appellee, and JACQUES VENDREDI, Respondent-Appellant.

First District (6th Division)   No. 1—90—1794

Opinion filed June 26, 1992.

Schiller, Du Canto & Fleck, Ltd., of Chicago (Sarane C. Siewerth, of counsel), for appellant.

Sam Panger, Jr., of Katz, Karacic & Helmin, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

On January 21, 1988, Eva Vendredi (Eva) filed a petition for dissolution of her 28-year marriage to Jacques Vendredi (Jacques). On February 24, 1989, the trial judge entered a judgment dissolving the marriage, which incorporated a written property settlement reached by the parties. The agreement equally divided the marital estate, valued at approximately $660,000, and awarded physical custody of the parties' minor child to Jacques. After a trial on the issues of maintenance and child support, the trial judge entered a supplemental judgment which awarded $3,000 monthly permanent maintenance to petitioner and denied respondent's claim for child support.

Jacques subsequently filed a petition for rehearing on the maintenance award, which alleged that newly discovered evidence showed

that Eva's income was higher than she represented at trial. On September 12, 1989, the trial court denied Jacques' request to stay enforcement of the maintenance order until ruling on the petition for rehearing, and on October 16, 1989, the trial court denied his motion for rehearing. On June 1, 1990, after a hearing the trial court ordered Jacques to pay $10,791.30 for a portion of the attorney fees incurred by Eva during the proceedings.

On appeal, Jacques contends that the trial court abused its discretion by: awarding Eva permanent maintenance of $3,000 monthly; denying his claim for child support; requiring him to pay Eva's attorney fees; denying his petition for rehearing on the issue of maintenance; and refusing to stay the order providing for maintenance pending a ruling on the petition for rehearing.

The following pertinent evidence was adduced at trial: Eva, who was 49 years old, was born in Hungary. Her only formal education was as a seamstress and dressmaker in Europe. She emigrated to the United States in 1959, and married Jacques in 1960. During the parties' marriage, respondent's job and army service required them to move to Switzerland, various parts of the United States, Japan, Holland and Mexico. During these years, Eva cared for the home and the children. In 1985 or 1986, Eva, along with two partners, opened a bakery and worked 30 to 60 hours weekly. Jacques was upset about Eva spending less time at home, but denied that he told her to quit. Eva subsequently left the business because Jacques wanted her to take care of the home and the children. Eva worked part time at a fabric store as a salesclerk, but left there because Jacques was upset about the time she spent away from home. Eva then took a job at Mira's Originals, a Glenview dress shop, where she worked throughout these proceedings.

Jacques, 53 years old, had been employed by Quaker Oats for 12½ years, and presently served as director of quality assurance and product development for the international division.

Substantial evidence was presented concerning the parties' annual income and expenses, including the following documents: a joint 1986 tax return; Jacques' 1987 tax return; and each party's individual return for 1988. These documents revealed that Jacques' gross income for 1986, 1987 and 1988 was $114,237, $128,701, and $121,965, respectively. Eva's 1988 return revealed that her gross income was $18,351. Jacques and Eva each submitted expense affidavits which estimated their monthly expenses at $5,101 and $4,458, respectively, and each party spent considerable time challenging the validity of the other's claimed expenses. Jacques testified that he calculated his

monthly expenses by dividing what he paid in the prior year by 12. Eva testified that some of her calculations were estimates.

Eva testified that her gross salary in 1988 was $8,850. She worked only 25 hours per week, earning $7 per hour, as a salesclerk at Mira's. She testified that she had tried unsuccessfully to find a job which paid more, or which allowed her to work more hours. Jacques testified that Eva worked 40 to 45 hours per week, but that her employer paid her by check for only 25 hours. At the time of trial, the parties' children, Pierre and Philippe, were 20 and 14 years old, respectively. A bank account exists for each child's educational expenses; at the time of trial, Pierre's account contained $3,200 and Philippe's account contained $13,000.

Initially, we consider whether the trial judge properly denied respondent's motion for a rehearing which alleged newly discovered evidence of petitioner's income. Specifically, the motion alleged that Jacques discovered two witnesses who would testify that Eva expected to earn $10 per hour when she began working at Mira's Originals; she was paid $400 weekly in cash in addition to her weekly paycheck; other employees of Mira's were paid in cash; and petitioner worked as a dress designer and supervised 10 employees.

■ To support the grant of a new trial, the new evidence must: (1) appear to be of such a conclusive character that it will probably change the result; (2) have been discovered since the trial; (3) be such as could not have been discovered before trial in the exercise of due diligence; (4) be material to the issues involved; and (5) not be simply cumulative to evidence presented at the initial trial. (*Central Production Credit Association v. Hans* (1989), 189 Ill. App. 3d 889, 545 N.E.2d 1063.) Granting a new trial on the basis of newly discovered evidence is not favored (*Mixer v. Billingsley* (1982), 110 Ill. App. 3d 239, 442 N.E.2d 275), and the movant bears the burden of showing that the above requirements have been met. (*Morris v. Doss* (1987), 163 Ill. App. 3d 1057, 517 N.E.2d 321.) Whether a new trial is warranted is a matter within the trial court's sound discretion, and this court will not reverse such decision absent an abuse of that discretion. *Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 357 N.E.2d 500.

■ In denying respondent's request for rehearing, the trial judge stated that the alleged new evidence was discoverable before trial, and that even if all of respondent's allegations were true, a new trial would not be warranted. We cannot say that such a determination was an abuse of discretion.

Our review of the record leads us to conclude that Jacques failed to demonstrate due diligence in discovering this evidence. His petition

alleges that the two witnesses, Roberta Brzybylski and Illiana Pacowski, would testify to information concerning Eva's income. Although Jacques claimed he knew of the cash payments as early as 1987, he made negligible efforts during this litigation to discover evidence supporting this allegation. He made no attempt to discover information from co-workers regarding Eva's income nor did he call Mira Horozswski or any of the employees at trial. Although he knew where Eva worked, he did not attempt to discover the names of her co-workers, either by written interrogatories to Eva or by subpoenas to Mira. Moreover, his allegation in his motion that he had "known" Brzybylski for some time belies his claim that the allegedly new evidence was unavailable earlier. Based upon the above, we do not believe that the information Jacques sought to present in the petition for rehearing was unavailable prior to or at the time of trial. His failure to fully participate in the discovery process does not warrant a new trial here.

We are also unpersuaded by Jacques' argument that Eva's failure to comply with his motion to compel production of bank records effectively prevented him from presenting evidence about her income. Supreme Court Rule 219 provides that when a party fails to comply with a document production request, the movant may seek an order compelling compliance. (134 Ill. 2d R. 219.) Jacques failed to compel production of the bank records, and we believe that such failure constitutes a lack of due diligence on his part. We also reject his assertion that his failure to call Mira Horozswski as a witness should be excused. In this regard, Jacques claims that she would have denied paying Eva in cash and pursuing such discovery would have been futile. If Horozswski testified regarding whether cash payments were made, her credibility would have been an issue for the trier of fact. In our view, respondent's failure to call Horozswski based upon his assumption as to her probable testimony indicates a lack of due diligence in investigating petitioner's income. Jacques testified that he believed Eva was paid in cash and extensively cross-examined her on her income level. Jacques, however, apparently chose not to present any evidence, other than his own testimony, and he was not entitled to a rehearing.

Even assuming that Jacques acted with due diligence, we do not believe that the alleged evidence, taken as true, would warrant a new hearing. His motion alleged that Eva earned $1,600 more monthly than she reported. With this additional amount, Eva's income would be approximately $28,000, exclusive of the maintenance. Even with the $3,000 monthly maintenance payments, Eva's gross annual in-

come equals slightly more than half of Jacques' annual salary. Given the disparate incomes, we cannot say that the additional evidence would have changed the result. As such, we do not believe that the trial judge abused her discretion in denying respondent's motion for rehearing.

We note that the above holding moots Jacques' contention that the trial court improperly refused to stay enforcement of the maintenance order pending resolution of his rehearing motion.

Jacques next contends that the trial court abused its discretion in ordering a permanent, rather than a reviewable, maintenance award. He also maintains that the amount awarded exceeded Eva's reasonable expenses and his ability to pay.

Section 504 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 504) provides that a court may grant maintenance only if it finds that the spouse seeking maintenance lacks sufficient property, including marital property, to provide for her reasonable needs; is unable to support herself through appropriate employment; or is otherwise without sufficient income. The Act further provides that the maintenance order is to be for an amount and duration as the court deems just, after considering the following additional factors: the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; the standard of living established during the marriage; the duration of the marriage; the age and the physical and emotional condition of the parties; and the ability of the spouse from whom maintenance is sought to meet his or her own needs while meeting those of the spouse seeking maintenance. (Ill. Rev. Stat. 1989, ch. 40, par. 504(b).) Once the court determines that maintenance is appropriate, no one factor is determinative of the amount or duration of the award. *In re Marriage of Jones* (1989), 187 Ill. App. 3d 206, 543 N.E.2d 119; *In re Marriage of Wolf* (1989), 180 Ill. App. 3d 998, 536 N.E.2d 792.

An award of maintenance is within the trial court's sound discretion, and it will not be disturbed by a reviewing court unless there is an abuse of discretion or the determination is against the manifest weight of the evidence. (*In re Marriage of Wolf*, 180 Ill. App. 3d 998, 536 N.E.2d 792.) An abuse of discretion in setting a maintenance award occurs when no reasonable person would take the view of the trial court. *In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 482 N.E.2d 1022.

The record indicates that the trial judge considered the following factors in making the maintenance award: petitioner's lack of suffi-

cient property to provide for her reasonable needs; her lack of sufficient income "in light of the limited job skills and education and training that she has currently"; her inability to meet her needs independently in light of her minimal skills, and her "very limited and sporadic" work history; the "very high" standard of living established during the marriage; the length of the marriage (28 years); the limited job opportunities available to her given her age, educational background and work history; the respondent's financial and employment security, and his ability to meet his own as well as petitioner's needs; and the tax consequences of a maintenance award.

■ We believe that the trial court correctly considered the applicable statutory factors and did not abuse her discretion in setting the duration and amount of the maintenance award. Trial courts have wide discretion in determining what needs are reasonable and must decide on a case-by-case basis, considering such factors as the parties' circumstances, the standard of living established during the marriage, and the duration of the marriage. (*In re Marriage of Kristie* (1987), 156 Ill. App. 3d 821, 510 N.E.2d 14.) We agree with the trial court's determination that the parties enjoyed a "very high standard of living." Indeed, the evidence reflects that the parties travelled extensively and eventually settled in an expensive marital home in an affluent suburb. The trial court specifically found that Eva needs $3,000 monthly, in addition to her own income, to meet her needs. The court also found that after paying his own expenses including maintenance, and adjusting his withholding taxes based upon the deductibility of the maintenance, Jacques had sufficient excess income to meet Eva's needs. We disagree with Jacques that the trial court improperly evaluated Eva's expenses and reasonable needs, or failed to consider the income-producing capability of her property.

The record reveals Eva's limited ability to meet her needs without maintenance. She is 50 years old and has never received any formal education, except as a seamstress. Moreover, the record indicates her sporadic and sparse employment history, and her inability to read or write English well. That petitioner has been employed is not dispositive, especially because she has little prospect of earning a salary commensurate with her needs. (See *In re Marriage of Kristie*, 156 Ill. App. 3d 821, 510 N.E.2d 14.) Although Eva worked for a short time during the parties' marriage, she was primarily a traditional housewife. As a result, she entered the work force relatively late in life with limited skills. Eva's 1988 gross income of $18,351 was comprised of $8,850 in salary, $10,000 in maintenance, and $641 in interest income. By contrast, Jacques earned $111,423 in gross salary during 1988, and more than $8,000 in interest.

Even if Eva worked a 40-hour week at $10 per hour, her annual gross income would not exceed $20,000. At this income level, Eva will not likely ever reach the standard of living supported by Jacques' income during their marriage. Although we recognize that maintenance is designed to allow a dependent spouse to become financially independent, permanent maintenance is appropriate where, as here, the recipient spouse is employable at an income level substantially lower than the previous standard of living. (*In re Marriage of Haas* (1991), 215 Ill. App. 3d 959, 574 N.E.2d 1376.) Based upon the record, Eva has no prospect of earning a salary commensurate with that of Jacques or one commensurate with her reasonable needs or the parties' lifestyle during the marriage. The record supports her claim that she is unable to adequately support herself through employment, and that Jacques can meet both their needs.

We find *In re Marriage of Kerber* (1991), 215 Ill. App. 3d 248, 574 N.E.2d 830, instructive. In *Kerber*, this court found that the trial court's reviewable, time-limited maintenance award was an abuse of discretion, characterizing the facts as a "classic case" for a permanent maintenance award. (*Kerber*, 215 Ill. App. 3d at 253, 574 N.E.2d at 833.) The court emphasized the following facts: duration of the marriage (30 years); wife's high school education; significant amount of time needed for education or training to allow wife to seek appropriate employment; wife's poor health; and the division of labor during the marriage which precluded wife from developing marketable skills, while allowing husband to do so. *Kerber*, 215 Ill. App. 3d at 253, 574 N.E.2d at 833.

Respondent cites *In re Marriage of Jones, In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294, and *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748, in support of his claim that the permanent maintenance award here was against the manifest weight of the evidence. The facts of these cases, however, are substantially dissimilar and do not support limiting the duration of maintenance in the present case.

In the present case, Eva was employed, and it is undisputed that she sought a higher paying job or one allowing more hours, although unsuccessfully. We cannot say that Eva failed to meet her affirmative obligation to seek gainful employment. Based upon the evidence, we see no likely expectation that Eva could ever generate sufficient income to meet her needs or the lifestyle maintained during the parties' marriage. We note, however, that if there is a substantial change in either party's circumstances, such as a decrease in Eva's expenses or a decrease in Jacques' income, the maintenance award would be automatically reviewable under section 510(a). (Ill. Rev. Stat. 1989, ch. 40, par. 510(a).) Con-

sidering all of the factors we have noted, we find no abuse of discretion in the amount and duration of the maintenance award.

■ We also reject Jacques' contention that the trial court abused its discretion in denying his claim for child support and educational expense from Eva. In this regard, Jacques maintains that the court ignored Eva's ability to contribute to the children's support by either direct payment or setoff against her maintenance award. We note initially that the older son dropped out of school, enlisted in the army, and thereby became emancipated during the post-trial proceedings. As such, only the support and educational expenses of the minor child, Philippe, are at issue. In rejecting respondent's claim for child support and educational expenses, the trial court wrote that "[Eva] cannot approach the same standard of living for herself, let alone be required to contribute to the educational expenses of the child."

Although we recognize the obligation of both parents to contribute to their child's support (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)), the Act requires us to consider the "financial needs and resources" of both the custodial and noncustodial parent. (Ill. Rev. Stat. 1989, ch. 40, pars. 505(a)(2), (a)(5).) Given the great disparity in the parties' incomes and future earning capacities, the parties' standard of living and Eva's reasonable needs, we conclude that the trial court's denial of Jacques' request for child support was a proper exercise of discretion. Indeed, the source of more than one-half of Eva's income is maintenance. Under these circumstances, we agree with the trial court that it would be illogical and contrary to the Act to obligate Eva to contribute to the support and educational expenses of the minor child. The trial court correctly denied Jacques' claim for child support and educational expenses.

■ Finally, we consider Jacques' contention that the trial court erred in requiring him to pay $10,791.30 or 30% of Eva's attorney fees.

The payment of attorney fees is the primary obligation of the party on whose behalf the services were rendered. (*In re Marriage of Meyer* (1986), 140 Ill. App. 3d 1031, 489 N.E.2d 906.) However, pursuant to section 508 of the Act, the trial court may order either spouse to pay a reasonable amount for his own or his spouse's "necessarily incurred" attorney fees. (Ill. Rev. Stat. 1989, ch. 40, par. 508.) The award of attorney fees is within the sound discretion of the trial court, and we will not disturb such decision absent an abuse of discretion. (*In re Marriage of Jones*, 187 Ill. App. 3d 209, 543 N.E.2d 119.) The party seeking fees must show an inability to pay and an ability of the other spouse to pay. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 483 N.E.2d 1229.) The amount of attorney fees awarded depends upon whether the work was reasonably required and necessary for the proper performance of legal

services given the circumstances of the case. In making such determination, the court may consider the following factors: the novelty, importance and difficulty of the questions raised; the attorney's degree of responsibility; the time and labor required; the skill and standing of the attorneys; the benefits resulting to the client; the usual and customary charge in the community; and the financial position of the parties. (*In re Marriage of Hirsch* (1985), 135 Ill. App. 3d 945, 482 N.E.2d 625.) No party should be required to pay more than the reasonable value of the legal services rendered simply because he has the ability to do so. *In re Marriage of Angiuli* (1985), 134 Ill. App. 3d 417, 480 N.E.2d 513.

Jacques contends that the attorney fees claimed on Eva's behalf were unreasonable and that the rates charged were improper because the issues were not novel or complex.

Although the parties reached an agreement as to the division of marital property, this was accomplished only after the prerequisite evaluation of property values and employee benefit plans, such as employee stock options and profit sharing. Further, the marital assets were sizable and indicate a more complex case. Moreover, the matter involved a long marriage and contested issues of maintenance, child support, and the value of the marital home. We, therefore, are unable to conclude, as Jacques suggests, that the fees were unreasonable or unnecessary.

We believe that the evidence sufficiently showed Jacques' ability to pay the fees, and Eva's inability to do so without depleting her capital assets, which Illinois law clearly does not require. (See *In re Marriage of Landfield* (1991), 209 Ill. App. 3d 678, 567 N.E.2d 1061; *Head v. Head* (1988), 168 Ill. App. 3d 697, 523 N.E.2d 17.) Moreover, Jacques is clearly in a superior position to acquire additional income and capital assets. (*In re Marriage of Girrulat* (1991), 219 Ill. App. 3d 164, 578 N.E.2d 1380; *In re Marriage of Orlando* (1991), 218 Ill. App. 3d 312, 577 N.E.2d 1334.) Considering the above factors, we find no abuse in the award of attorney fees.

For the herein stated reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

LaPORTA and RAKOWSKI, JJ., concur.