*In re* ESTATE OF DOROTHY LaCASSE, Deceased (George J. LaCasse, Ex'r of the Estate of Dorothy LaCasse, Deceased, Plaintiff-Appellant, v. Beverly Archibald *et al.*, Defendants-Appellees).

First District (1st Division)    No. 1—91—2003

Opinion filed August 1, 1994.

Siebel, Whipple & Schofield, of Chicago (Paul F. Schofield, of counsel), for appellant.

Beverly Archibald, of Chicago, appellee *pro se.*

Sachnoff & Weaver, Ltd., of Chicago (Steven H. Cohen and Gary S. Caplan, of counsel), for appellee Downtown Lock Box.

JUSTICE MANNING delivered the opinion of the court:

Plaintiff George LaCasse, as executor of the estate of Dorothy LaCasse, appeals from a judgment of the trial court, wherein the court entered a judgment of $12,000 against codefendant Beverly Archibald, and in favor of plaintiff. George also appeals from the trial court's entry of a directed verdict in favor of codefendant Downtown Lock Box Partnership.

On appeal, plaintiff argues that: (1) the court erred in denying his motion for a new trial; (2) the court erred in barring plaintiff's expert witness testimony; (3) the trial court erred in entering a directed verdict in favor of Lock Box; (4) the trial court's award of only a $12,000 judgment was against the manifest weight of the evidence; (5) the court lacked jurisdiction to enter a money judgment in favor of the executor individually and against a co-beneficiary of the estate; and (6) the court erred in its determination that no conversion had occurred. We reverse and remand.

On September 24, 1986, decedent Dorothy LaCasse, mother of George LaCasse and Beverly LaCasse-Archibald, died in Cook County Illinois, leaving a will in which plaintiff George and codefendant Beverly were named as co-executors and heirs to the estate. Plaintiff testified that on the afternoon of decedent's funeral, he talked with codefendant Beverly about disposal of the items in the estate and the two agreed to dispose of the items one at a time. Plaintiff testified that Beverly told him to look for storage centers that were close to her apartment, which he did. Plaintiff stated that Beverly chose the storage facility, Lock Box Storage, and that he went to the facility to examine it—reviewing security. The two also talked about the division of the furniture.

As part of his duties as representative, plaintiff prepared an

inventory list of the contents of decedent's home based upon many sources, including an appraiser named Betty Kolpas. He used this information to determine the value of personal property. He testified that Kolpas came to decedent's home in October 1986 and took pictures of various items, and that the final inventory list was prepared in spring of 1988. Plaintiff testified that he took possession of several of the items on the inventory list (numbers 1 through 76), while items number 77 through 172 were taken by codefendant Beverly. He eventually placed the items in his possession at Lock Box storage facility. Plaintiff valued the items in his possession at Lock Box to be worth $30,000. He derived this figure after talking with Sotheby's, an auction house in New York City, consulting antique dealers, and talking with friends. He valued the remaining items under Beverly's control to be worth $90,000. Plaintiff stated that he helped Beverly move the chest of drawers and a dresser, footstools, china and other items to her apartment.

Plaintiff testified that Beverly never signed the contract with Lock Box and that he paid the first month's rent. Plaintiff left Chicago in early December 1986 and returned to Florida. Before he left town, he placed a padlock on the door of the Lock Box storage facility. His plans were to sell the furniture at an auction house. He contacted Sotheby's in New York and found what its rates were.

Plaintiff stated Beverly removed items from decedent's home on three separate occasions. Some of the items that were taken by Beverly included bric-a-brac china, pewter collection, porcelain balls and vases, a highboy chair and dresser. Plaintiff testified that 6 of the 172 items in the inventory were included in an appraisal prepared by Alice G. Kaide. Plaintiff testified that the total value of the items removed from decedent's home by codefendant Beverly was $90,000. He stated that the pictures taken by Kolpas and admitted into evidence represented the items in his possession as of October 1986. Plaintiff estimated that the total value of the estate was $120,000. He arrived at this value by reviewing certain envelopes containing figures, consulting with Sotheby's, a company in New York, talking with Betty Kolpas and antique dealers in Florida, where he resided.

In December 1986, plaintiff, at the recommendation of Beverly, entered into a lease agreement with codefendant Downtown Lock Box for storage of the personal items in his possession. The month-to-month lease amount was $89. The pertinent terms of the agreement provided:

"Lessee shall pay his rent to the Lessor, at the above address, in advance of the first day of each calendar month he wishes the lease to remain in effect. Lessor does not bill *** Either party may

properly terminate this lease as of the last day of the month by serving the other with a written notice of their intention to terminate at least 20 days prior to the last day of the then current rental month."

The lease also provided:

"If Lessee breaches this contract in any manner he gives Lessor a security interest in the personal property he has stored at the facility and the right to sell or dispose of the property as he sees fit and apply the proceeds to any unpaid balances after notice of such impending action is given to Lessee."

About May 19, 1988, codefendant Lock Box sent a notice by certified mail to plaintiff advising him that the storage payments were past due for the months of March, April and May of 1988 in the amount of $374. Lock Box also advised plaintiff that it planned to terminate the lease if the arrearages were not paid within 30 days. The notice stated:

"This Notice Shall Be In Lieu of Any Other Notice Which Might Be Required By Law."

Plaintiff testified that in response to the letter received from Lock Box, he sent a payment of $374 to Lock Box by certified mail. He received the return green card on June 16, 1988. About July 22, 1988, plaintiff reviewed his cancelled checks with his wife and noticed that the check to Lock Box was not included. He stated that he then called Mr. Perry at Lock Box and questioned him about the check. Plaintiff testified that Perry advised him that the check had not been received. Plaintiff told Perry that he would send another check; however, Perry advised plaintiff that the items had been sold. Plaintiff later contacted his attorney, who discovered that the items had been sold to codefendant Beverly for $600.

Codefendant Beverly Archibald testified that on the afternoon of the decedent's funeral, she and plaintiff talked about the contents of the home and the procedure they should use to dispose of the contents. Beverly testified that she told plaintiff that the items in the home should be placed in storage for one month until they each decided which individual items they wished to keep. Beverly stated that they looked in the Yellow Pages and decided on Lock Box as the storage company where the property would be stored.

Beverly stated that once they went to the home, plaintiff agreed that she could take the footstools. Beverly testified that the week following the death of decedent, she suggested to plaintiff that he take all the contents of the home back to Florida and that she would handle the sale of the house. She stated that after plaintiff refused to agree to this option she offered a second option. She asked plaintiff

whether he would agree to her taking the smaller items (china, lamps, dishes, etc.) and keeping those as her part of the inheritance, but plaintiff did not say anything. The following week, Beverly requested that the highboy and dresser that her mother promised to her be moved out of the apartment. Beverly moved those items to her apartment. Beverly stated that in November of 1986, she took some of the remaining contents from the home to Lock Box storage facility. These items were among those on the inventory list number 77 through 172 which were in Beverly's possession.

Beverly stated that after several months, she was unable to contact plaintiff regarding the disposition of the property. She concluded that he was not interested and began to sell the property in her possession which she had stored at Lock Box. She sold some of the items to individuals in her building and other persons that were referred to her. She received about $4,000 total for the items.

Beverly called Lock Box every month to determine whether plaintiff had paid the rent for the remaining items that were in storage. She testified that on July 13, 1988, Lock Box advised her that the rent had not been paid and inquired whether she was interested in purchasing the furniture. Lock Box told her that she would need $607. She paid the $607 and, after acquiring the contents of the storage locker, she sold various items at different times for a total of about $1,800. She retained Mr. Theodore Kamish to appraise about five items, including a grandfather's clock. Kamish displayed the grandfather's clock and several other items for sale at his shop. Beverly later sued Kamish for $15,000 when he returned the wrong clock to her. Beverly testified that Alice Kaide also conducted an appraisal of the items that she had removed from her mother's home and that were in her possession and determined the value of certain items to be about $33,000.

Plaintiff first argues that the trial court erred in denying his motion for a new trial. Specifically, he maintains that: (1) codefendant Beverly withheld evidence in violation of his request to produce; (2) the directed verdict was based upon the false testimony of Beverly; (3) codefendant Lock Box withheld evidence which if disclosed would have allowed plaintiff's attorney time to contact a material witness before trial; (4) material evidence of collusion between defendants Beverly and Lock Box existed; and (5) the cumulative effects of the false testimony and concealed information deprived plaintiff of a fair trial.

Plaintiff maintains that on three separate occasions he requested that Beverly provide him with any appraisals of the property that she had obtained. These requests were made at the time of Beverly's

deposition, prior to trial, and during trial. Plaintiff asserts that Beverly repeatedly denied the existence of any appraisals and that her attorney likewise denied that they existed. However, the evidence before trial and at trial proved that Beverly had appraisals performed by Alice Kaide and J.M. Rich antiques. Plaintiff also maintains that the evidence at trial revealed that Beverly had possession of a third appraisal which she made reference to in a correspondence to Hanzel Galleries. Plaintiff contends that these hidden appraisals went directly to the issue of value and could have changed the course of trial and the outcome had he known of them prior to trial. (*Central Production Credit Association v. Hans* (1989), 189 Ill. App. 3d 889, 545 N.E.2d 1063.) Plaintiff asserts that, where a party is surprised at trial by testimony relating to a new fact which could not have been foreseen, he may be entitled to a new trial if the newly discovered evidence constitutes surprise. *Darrough v. White Motor Co.* (1979), 74 Ill. App. 3d 560, 562, 393 N.E.2d 122.

Plaintiff further maintains that Beverly failed to comply with the notice to produce records regarding the estate property and testified falsely to the existence of documents evidencing money she received from sale of the property. He maintains that Beverly testified that she had no recollection of the names of any persons to whom any of the items removed from the home had been sold. However, after the close of plaintiff's case in chief, Beverly produced a document showing that several items had been sold to Hanzel Galleries for over $5,000. Plaintiff asserts that Beverly's failure to disclose the truth and to provide the appraisals and other documentation constituted surprise and denied him a fair trial. (*Herington v. Smith* (1985), 138 Ill. App. 3d 28, 31, 485 N.E.2d 500.) Plaintiff further alleges that Beverly failed to disclose that she had a contractual relationship with Lock Box prior to 1988, although she in fact had such a relationship. Plaintiff asserts that after Lock Box's motion for directed verdict had been granted, Beverly testified that she had signed her own storage contract with Lock Box prior to plaintiff's contract with the company. Counsel for Beverly provided a receipt showing that the agreement was signed on November 28, 1986. Plaintiff maintains that this evidence shows that there was a preexisting relationship between the two that was concealed, resulting in substantial prejudice to him. Plaintiff contends that the cumulative effects of the false testimony and concealments resulted in substantial prejudice sufficient to warrant a new trial.

As to codefendant Lock Box, plaintiff maintains that Lock Box failed to produce employment records of Reginald Hardrick, a key witness in the case. Plaintiff contends that shortly before trial, Lock

Box provided a document with information containing the witness' home address and telephone number. Plaintiff maintains that at the time Lock Box finally provided the information it was too late to subpoena or depose Hardrick, resulting in substantial prejudice to him.

Codefendant Beverly asserts that the trial court's denial of plaintiff's motion for a new trial was proper. She maintains that the preexisting agreement between her and codefendant Lock Box does not provide any evidence of collusion between the parties. Beverly argues that plaintiff's request for a new trial amounts to a request for sanctions for discovery violation (*Zimmer v. Melendez* (1991), 222 Ill. App. 3d 390, 583 N.E.2d 1158) and that he never filed a motion pursuant to Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)) to force compliance with discovery. Beverly contends that plaintiff suffered no prejudice where the appraisals were provided on the day before pretrial.

Beverly also maintains that plaintiff's claim that he is entitled to a new trial where he allegedly discovered that several items had been sold to Hanzel Galleries for $5,000 is without merit. Beverly distinguishes *Herrington,* the authority cited by plaintiff, pointing out that in that case the trial court placed its rationale for granting a new trial of record. Beverly contends that, in the instant case, the trial court did not place its reason for denying plaintiff's motion for a new trial of record, thus making the instant case distinguishable from *Herrington.* Beverly maintains that in the absence of the court's reasoning, the record is incomplete and a presumption arises that the court's ruling conformed to the law. *Romanek-Golub & Co. v. Anvan Hotel Corp.* (1988), 168 Ill. App. 3d 1031, 522 N.E.2d 1341.

The decision whether to grant a new trial is a matter that rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. (*Central Production Credit Association v. Hans* (1989), 189 Ill. App. 3d 889, 897, 545 N.E.2d 1063.) To support the grant of a new trial, the new evidence must: (1) appear to be of such a conclusive character that it will probably change the result; (2) have been discovered since trial; (3) be such as could not have been discovered before trial in the exercise of due diligence; (4) be material to the issues involved; and (5) not be simply cumulative to evidence presented at the initial trial. (*Central Production Credit Association v. Hans* (1989), 189 Ill. App. 3d 889, 545 N.E.2d 1063.) Granting a new trial on the basis of newly discovered evidence is not favored (*Mixer v. Billingsley* (1982), 110 Ill. App. 3d 239, 442 N.E.2d 275), and the movant bears the burden of showing that the above requirements have been met. *In re Marriage of Vendredi* (1992), 230 Ill. App. 3d 1061, 1065, 598 N.E.2d 961.

●1 In the instant case, the grounds upon which plaintiff based his motion involved that of concealment of material information by defendants Beverly and Lock Box. While it may be true that plaintiff had no way of knowing whether counsel for both Lock Box and Beverly was being truthful, certainly he had at his disposal the resources of the court to command production of these documents if they existed. Plaintiff served Beverly with a notice to produce documents relating to the appraisal and sale of any items removed from decedent's home. Similarly, he served notice on Lock Box requesting that the name and address of former employee Hardrick be provided. While the information was not provided pursuant to plaintiff's production request, plaintiff admits that the information regarding the appraisals was provided on the day before pretrial. Certainly, this court does not condone a party's flagrant violation of discovery requests; however, based on plaintiff's own admission and our review of the record, we cannot say that a new trial is warranted on these grounds. Plaintiff could have filed a motion to compel compliance by Beverly and Lock Box pursuant to Supreme Court Rule 219 (134 Ill. 2d R. 219). His reliance on representations made by counsel for both parties up to the date of pretrial cannot be said to have been an exercise of diligence. We believe that this failure constitutes a lack of due diligence on his part. (See, *e.g*, *In re Marriage of Vendredi* (1992), 230 Ill. App. 3d 1061, 1065, 598 N.E.2d 961 (where plaintiff's failure to compel the production of bank records constituted lack of diligence).) Further, the court was aware of the facts in this case and clearly expressed its concern as to Beverly's veracity and the actions of Lock Box. The court concluded that there was no proof of any fraudulent activity between the parties. Moreover, with the exception of a general claim that the actions by defendants prejudiced his case, plaintiff has not specifically alleged how the actions of defendants would have changed the result. To be certain, plaintiff might have changed his litigation strategy; however, a change in strategy is not proof that the result would have been different. Where it appears that an error does not affect the outcome below, or where the court can see from the record that no injury has been done, the judgment or decree will not be disturbed. (*J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 483 N.E.2d 273.) Thus, we find that based on allegations made by plaintiff and the evidence of record, the trial court did not abuse its discretion in denying plaintiff's motion for a new trial.

Plaintiff next argues that the trial court erred by barring his expert, Betty Kolpas, from testifying. Specifically, plaintiff maintains that defendant Beverly was personally aware of the expert, that the

expert was mentioned during plaintiff's deposition in October 1990, and that the expert was formally disclosed 20 days before trial.

Defendant Beverly argues that the trial court properly barred plaintiff's expert where plaintiff failed to disclose his expert 60 days before trial as required by Supreme Court Rule 220 (134 Ill. 2d R. 220). Beverly asserts that plaintiff's testimony during deposition that Kolpas had performed an appraisal of the personal property did not meet the requirements of Rule 220. Beverly further asserts that plaintiff's subsequent disclosure of Kolpas as his expert 20 days before trial prejudiced her case because there was insufficient time to depose Kolpas and to provide rebuttal expert testimony. We disagree.

Supreme Court Rule 220(a) provides that an expert is:

"[A] person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion within his expertise at trial." (134 Ill. 2d R. 220(a)(1).)

The modern standard of admissibility of expert testimony is whether the testimony will aid the trier of fact in its understanding of the facts presented at trial. *Mache v. Mache* (1991), 218 Ill. App. 3d 1069, 1077, 578 N.E.2d 1253.

In *Mache*, plaintiffs, the children of decedent, brought suit alleging that the court improperly excluded expert testimony on the issue of undue influence. In that case, defendant and decedent were legally separated in 1988. Decedent became sick and defendant moved into decedent's home to care for him in June 1990. Between June 1990 and October 5, 1990, decedent transferred funds totaling $360,000 to defendant. Plaintiffs alleged that these funds were transferred as the result of defendant's undue influence over decedent.

During trial, plaintiffs attempted to offer expert testimony demonstrating defendant's undue influence over decedent. The court denied testimony by the expert, and plaintiff made an offer of proof. The appellate court concluded that the offer of proof proffered by plaintiffs' expert constituted nothing more than a legal opinion and did not touch upon matters beyond the understanding or comprehension of the court. *Mache*, 218 Ill. App. 3d at 1077.

While the expert was not allowed to testify in *Mache*, the court did allow plaintiff the opportunity to make an offer of proof. This fact is distinguishable from the instant case, where the court did not allow plaintiff to make an offer of proof. To preserve for review the erroneous exclusion of evidence, an offer of proof which specifies the proposed testimony must be made. *A.W. Wendell & Sons, Inc. v. Qazi* (1993), 254 Ill. App. 3d 97, 626 N.E.2d 280.

In the instant case, plaintiff testified in his deposition that Betty Kolpas had performed an appraisal of personal property on his behalf. This fact is not disputed by either Beverly or Lock Box. Additionally, the record reveals that Beverly herself had contacted Kolpas in October 1986 requesting that Kolpas conduct an appraisal for her, but Kolpas declined to do so. Kolpas advised Beverly that she was conducting an appraisal for plaintiff and that it would not be appropriate under the circumstances to also conduct an appraisal for Beverly. Further, plaintiff did eventually provide a written disclosure of Kolpas as his expert 20 days prior to trial.

The purpose of Supreme Court Rule 220 is to prevent surprise. (*Cochran v. Great Atlantic & Pacific Tea Co.* (1990), 203 Ill. App. 3d 935, 561 N.E.2d 229.) Rule 222(b) allows a trial court to establish a disclosure schedule if an expert witness is not otherwise disclosed. The 60-day limitation in Rule 220(b) is implemented to insure that discovery regarding expert witnesses not otherwise disclosed is completed sufficiently before trial. (*Lorenz v. Air Illinois, Inc.* (1988), 168 Ill. App. 3d 1060, 1065, 522 N.E.2d 1352.) Where an expert is otherwise disclosed to defendant, Rule 220 does not apply. *Lorenz*, 168 Ill. App. 3d at 1065.

•2 Although Supreme Court Rule 220 requires disclosure of an expert 60 days prior to trial, Beverly cannot claim prejudice or surprise where she had personal knowledge of plaintiff's expert. The rule makes the schedule applicable where the expert is not otherwise disclosed. Here, not only did Beverly have personal knowledge of plaintiff's expert prior to trial, but the expert was disclosed during deposition in October 1990 and 20 days prior to trial. Certainly, defendant could have requested a continuance if the trial court had allowed the expert to testify. Further, the trial court's failure to allow plaintiff to make an offer of proof lends strong support to plaintiff's claim of error. The value of the property of the estate was at issue here, and from the incredible testimony of Beverly, as noted by the court, and the lack of sufficient proof presented by plaintiff, the expert testimony would have aided the court in understanding the value of the estate property. While there was testimony that the value of the property in storage was $90,000, the court awarded plaintiff only $12,000. Clearly, expert testimony would have assisted the court in its determination of the appropriate value. The court, itself, stated:

> "It's unfortunate that I didn't have the benefit of any expert testimony, but that I thought that the expert testimony had to be excluded by the reasoning that runs throughout this record."

The court admitted that there was no determination as to whether

the items were antiques or secondhand. Under these circumstances, we find that the error in excluding the testimony of plaintiff's expert had a prejudicial effect on the judgment.

Plaintiff next argues that the trial court erred in entering judgment in favor of Lock Box at the close of plaintiff's evidence. Specifically, plaintiff contends that by accepting late payments in the past Lock Box waived its right to subsequently enforce the right to prompt payment. Plaintiff also maintains that the evidence was equivocal where he testified that payment had been sent to Lock Box and where Lock Box either received the payment and misapplied it or lost the payment. Further, plaintiff contends that Lock Box violated the Illinois Self-Service Storage Facility Act (Act) (770 ILCS 95/1 (West 1992)) by admittedly failing to comply with provisions of that statute.

Lock Box maintains that the directed verdict was proper where plaintiff did not produce any evidence that he made the necessary payment to Lock Box for the rental amounts due. Additionally, Lock Box asserts that it did not waive its rights to receive payment simply because it had accepted late payments in the past. Further, Lock Box contends that the notice provision under the lease governed the sale of the personal property. It argues that the provisions of the lease governed the sale of the property and not the statute. Lock Box maintains that section 2(A) of the Self-Service Storage Facility Act states:

> "If an owner issues any warehouse receipt, bill of lading, or other document of title for the personal property stored, the provisions of this Act do not apply." 770 ILCS 95/2(A) (West 1992).

Lock Box contends that because the parties entered into a lease, the Act is inapplicable here.

We first note that the parties have referred to the court's determination as a "directed verdict." However, in a nonjury case, where the court enters a determination in favor of defendant after the close of plaintiff's evidence, the determination is properly referred to as either a "judgment" or "finding." (See, e.g., Kokinis v. Kotrich (1980), 81 Ill. 2d 151, 407 N.E.2d 43.) In either case, the trial court must consider all of the evidence, including any favorable to the defendant, and is to pass on the credibility of witnesses, draw reasonable inferences from the testimony, and generally consider the weight and the quality of the evidence. (Rohter v. Passarella (1993), 246 Ill. App. 3d 860, 865, 617 N.E.2d 46.) On appeal, the standard for review of a trial court's finding or judgment is whether the decision is against the manifest weight of the evidence. (Kokinis, 81 Ill. 2d at 154.) Manifest weight is that quantum of evidence which makes the exis-

tence or nonexistence of a fact clearly evident, plain and indisputable. *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 83, 392 N.E.2d 628.

●3 Pursuant to section 4, "Enforcement of Lien," the statute requires that, in addition to a notice of demand being made before the sale or other disposition of property can occur, "an advertisement of the sale or other disposition shall be published once a week for two consecutive weeks in a newspaper of general circulation where the self-service storage facility is located." (770 ILCS 95/4(E) (West 1992).) In the instant case, Lock Box does not dispute the fact that it is a self-service storage facility. It simply maintains that the existence of a lease negates its responsibility to comply with the statute. Lock Box has cited no authority for this proposition, and we find the argument unpersuasive. It is clear from reading section 2 of the statute that the legislature did not intend that the self-storage facility would be equated with a "warehouse" for purposes of the Act. In fact, the language of the statute itself clearly spells out:

> " 'Self-service storage facility' means any real property designed and used for the purpose of renting or leasing individual storage space to occupants ***." (770 ILCS 95/2(A) (West 1992).)

Thus, Lock Box's faint attempt to skirt the statutory requirements by suggesting that the lease somehow removed this agreement from coverage under the statute is clearly erroneous. Beverly testified that she called the facility monthly and was advised by Lock Box in July 1988 that she could purchase the items by submitting $607. Lock Box does not claim that it advertised the property for sale in a local paper and that Beverly was the only bidder. Further, Lock Box does not dispute Beverly's testimony as to how the personal property was sold to her. Thus, the existence of this statutory provision compels us to find that the trial court erred in entering a "directed verdict" in favor of Lock Box.

●4 As to plaintiff's contention that the trial court lacked jurisdiction to enter a money judgment in favor of him individually, we find this argument without merit. Plaintiff maintains that he filed a citation proceeding to recover property taken by Beverly pursuant to section 16—1 of the Probate Act of 1975 (755 ILCS 5/16—1 (West 1992)). He asserts that he never requested that the court enter a money judgment in his favor.

Section 16—1(d) (755 ILCS 5/16—1 (West 1992)) provides:

> "The court may examine the respondent on oath whether or not the petitioner has proved the matters alleged in the petition, may hear the evidence offered by any party, may determine all questions of title, claims of adverse title and the right of property and may enter such orders and judgment as the case requires."

We find that this provision vested the trial court with proper jurisdiction to enter the judgment in favor of plaintiff. The record shows that plaintiff and Beverly were decedent's only heirs. Thus, the property belonging to the estate would have passed to these two in equal proportions. The court under section 16—1(d) is empowered to determine the rights of property and enter orders and judgment as the case requires. Thus, plaintiff's argument is without merit.

Because we reverse and remand on the trial court's errors in excluding expert testimony and granting a "directed verdict," we need not address the remaining issues.

Accordingly, the judgment of the trial court is reversed and remanded. We reverse and remand on the issue of damages and reverse and remand the "directed verdict."

Reversed and remanded.

BUCKLEY and O'CONNOR, JJ., concur.